Jesus NUÑO, Plaintiff,

v.

COUNTY OF SAN BERNARDINO, San Bernardino County Sheriff, San Bernardino County Sheriff's Department, San Bernardino County Sheriff V. Moreno, # M3638, sued individually and in his official capacity, and does 1–10, inclusive, Defendants.

No. ED CV 98–175 RT (VAPx).

United States District Court, C.D. California.

July 28, 1999.

Antonio H. Rodriguez, Rodriguez & Rodriguez, Los Angeles, CA, for plaintiff.

Aaron Hancock, Roberts & Morgan, Riverside, CA, for defendants.

**ORDER GRANTING DEFENDANTS COUNTY OF SAN BERNARDINO AND VICTOR MORENO'S MOTION TO DISMISS.**

TIMLIN, District Judge.

In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (*Heck* ), the Supreme Court held that a plaintiff seeking damages pursuant to 42 U.S.C. § 1983 (section 1983), based on factual allegations which would, if proven, render that plaintiff's previous criminal conviction or resulting sentence invalid, must demonstrate that the previous conviction or sentence has been reversed or invalidated by an authorized state or federal court or tribunal, or expunged by executive branch action to state a valid cause of action. *Id.* at 486–87, 114 S.Ct. at 2372. The instant motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Rule 12(b)(6)) requires the Court to decide whether this rule applies where the conviction or sentence in the prior criminal action was entered based on the plaintiff's plea of nolo contendere in that action.

## I.

### BACKGROUND AND FACTUAL ALLEGATIONS[1]

On July 19, 1997, plaintiff Jesus Nuño (plaintiff) was detained and arrested by San Bernardino County deputy sheriff Victor Moreno for, among other reasons, resisting arrest, carrying a concealed weapon and possession of a loaded firearm. On February 18, 1998, plaintiff entered a plea of nolo contendere to misdemeanor violations of California Penal Code sections 148 (obstructing a peace officer) and 12025(a) (carrying a concealed firearm). A third charge under California Penal Code

---

1. The factual allegations are assumed to be true when a court is considering a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Rule 12(b)(6).

 Further, the Court grants defendants' request that the Court judicially notice court documents in *People v. Jesus Nuño*, MVI 015336, County of San Bernardino Consoli-

dated Superior/Municipal Court, pursuant to Rule 201 of the Federal Rules of Evidence. The Court may take judicial notice of these documents without converting the instant motion to dismiss into a motion for summary judgment. *See Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1064 n. 7 (9th Cir. 1998).

section 12031(a) (carrying a loaded fire-arm) was dismissed by the state court on the prosecutor's motion. The plea was accepted by the state court and plaintiff was placed on probation, and as conditions thereof was required to make a restitution payment and serve 30 days in custody. There is no allegation that plaintiff ever appealed any aspect of this conviction or sentence, nor is it alleged that he ever petitioned for a state or federal writ of habeas corpus, or that the conviction and sentence were expunged or otherwise declared invalid.

On August 20, 1998, plaintiff filed a first amended complaint (FAC) in this action against defendants County of San Bernardino (the County), the San Bernardino County Sheriff, the San Bernardino County Sheriff's Department, San Bernardino County Sheriff V. Moreno, # M3638, sued in both his individual and official capacities (Moreno), and does 1 through 10.[2] The FAC alleges three causes of action.

The first cause of action alleges that on July 19, 1997, Moreno and certain doe defendants detained and arrested plaintiff without "reasonable or probable cause," "falsely accused [plaintiff] of committing crime," and "assaulted and battered [plaintiff] without legal cause or justification." The FAC further alleges that unspecified "defendants"—presumably Moreno and the does—prepared false reports "and acted to ensure that the San Bernardino

County District Attorney [would] file a criminal complaint against and [ ] prosecute plaintiff" in order to deny plaintiff access to the civil courts concerning this matter. Plaintiff alleges that this conduct deprived him of various constitutional rights and seeks damages pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1986." Plaintiff further seeks reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

The second cause of action alleges a *Monell v. New York City Dep't of Soc. Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), claim against the County for its custom, practice and policy of inadequately hiring, training, supervising, assigning and disciplining of Moreno. The cause of action further alleges that the County maintains an unconstitutional policy of condoning and covering up misconduct by the County's deputy sheriffs. The third cause of action alleges supplemental state law tort claims for battery and false arrest.

The County and Moreno (collectively defendants) now move to dismiss the entire FAC, relying exclusively on the Supreme Court's decision in *Heck v. Humphrey*.[3]

## II.

## ANALYSIS

### A. Standard for Rule 12(b)(6) Motion

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the

---

**2.** Moreno is not the San Bernardino County Sheriff. Rather, he appears to be a San Bernardino County deputy sheriff. The FAC does not individually name the San Bernardino County Sheriff, and the Court thus assumes that the Sheriff is sued only in his or her official capacity.

**3.** Defendants treat the entire FAC as if it alleged only violations of section 1983, Plaintiff's opposition is also so limited. While courts have concluded that *Heck* bars actions brought pursuant to 42 U.S.C. § 1985 as well as section 1983, *see Hazel v. Reno*, 20 F.Supp.2d 21 (D.D.C.1998), it is not clear whether or how *Heck* would or could apply to a properly pled 42 U.S.C. § 1981 (section 1981) claim. The Court need not consider this issue, however, as the FAC, liberally con-

strued, states no facts arguably sufficient to give rise to a claim under section 1981. Despite the reference to that statute in the body of the FAC, the Court concludes that the complaint fails to state a section 1981 cause of action. *See Argabright v. United States*, 35 F.3d 472, 474 (9th Cir.1994). The same analysis applies to the claim under 42 U.S.C. § 1986.

Defendants similarly fail to address the state claims pled in the third cause of action of the FAC. *Heck* is a rule of federal law that, absent its adoption by the California courts, has no application to these state law claims. Nonetheless, the Court concludes that, if the federal civil rights causes of action must be dismissed, it will decline to exercise its discretion to retain the state law causes of action. *See* 28 U.S.C. § 1367(c)(3).

complaint. *Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir. 1987). Dismissal of an action pursuant to Rule 12(b)(6) is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1482 (9th Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Industries. Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). A cause of action will be dismissed only where there is either "a lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988).

## B. *Heck v. Humphrey*

While Indiana state prisoner Roy Heck's direct appeal of his state law voluntary manslaughter conviction was pending in the Indiana courts, and while he remained incarcerated pursuant to that conviction, he filed a section 1983 action against the state officials who had investigated and prosecuted his case. Heck alleged that these officials had engaged in an unlawful investigation, knowingly destroyed exculpatory evidence, and caused an illegal voice identification procedure to be used against him at his trial. Heck sought money damages, but did not seek release from custody or other injunctive relief.

The Supreme Court observed that Heck's complaint presented facts arguably sufficient to entitle Heck to some form of relief under one of two federal statutes designed to "provide access to a federal forum for claims of unconstitutional treatment at the hands of state officials": section 1983, or the habeas corpus statute, 28 U.S.C. § 2254 (the habeas statute). *Heck,* 512 U.S. at 480, 114 S.Ct. at 2369. Under the habeas statute, Heck was potentially entitled, upon exhausting his state remedies, to seek release from his allegedly unlawful state custody. Under section

1983, Heck was potentially entitled to seek money damages (and perhaps injunctive relief to remedy the state officials' deprivation of his federally protected rights.)

Faced with this potential overlap, and particularly in light of the fact that section 1983 contains no exhaustion of state remedies requirement while the habeas statutes does, the Supreme Court held that Heck's section 1983 damages action was not cognizable. "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by [an authorized state tribunal], or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 486–87, 114 S.Ct. at 2372 (footnote and citation omitted). In other words, Heck was required to prosecute a state criminal appeal, and, if unsuccessful therein, to challenge his conviction through the state and federal habeas process specifically created for such challenges, or obtain an expungement of the conviction by executive order. Only if he succeeded in invalidating his conviction through these processes could Heck bring a section 1983 action to obtain monetary compensation for the damage caused him by the state officials' allegedly unconstitutional conduct leading to that conviction.

The Supreme Court explained this holding in several ways. Primarily, the Court relied, by way of analogy, on the common law tort action of malicious prosecution. The requirement that a section 1983 plaintiff demonstrate the reversal, expungement or other invalidation of his or her underlying conviction was considered analogous to the common law requirement that a plaintiff in a malicious prosecution action prove that the underlying criminal action had terminated in his or her favor. The common law requirement, in turn, was valuable because it " 'avoids parallel litigation over the issues of probable cause and guilt ... and it precludes the possibility of

the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transactions.'" *Heck,* 512 U.S. at 484, 114 S.Ct. at 2371 (quoting Speiser, et al, American Law of Torts, § 28:5, p. 24 (1991)).

The Court further explained that the favorable termination rule, as explicated in *Heck,* would serve the Court's "long expressed ... concerns for finality" by limiting the mechanisms available for collateral attack upon criminal convictions. *Id.* at 485, 114 S.Ct. at 2371–72:

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.
>
> Accordingly,
>
> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 487, 114 S.Ct. at 2372.

■ As noted above, plaintiff pled nolo contendere (nolo plea) to violations of sections 148 and 12025(a) of the California Penal Code. There is no allegation in the complaint that either of these convictions was ever reversed on direct appeal, invalidated by an authorized state tribunal, set aside through federal habeas corpus, or expunged by executive branch action. Thus, if plaintiff's successful prosecution of his section 1983 claims would "necessarily imply the invalidity" of either of these convictions, the first and second causes of action of the FAC must be dismissed.[4]

### C. Obstruction of a Peace Officer and *Heck*

Plaintiff does not directly challenge either his convictions or the sentence imposed. Thus, his allegations, if they fall within the sweep of *Heck* at all, do so because he seeks damages "for other harm caused by actions whose unlawfulness would render his conviction or sentence invalid." *Heck,* 512 U.S. at 486–87, 114 S.Ct. at 2372. For example, an allegation by plaintiff that he was unconstitutionally coerced into entering his nolo pleas or that he received constitutionally ineffective assistance of counsel would clearly imply the invalidity of his resulting convictions, and would thus require dismissal under *Heck.* *See Hanley v. Stewart,* 21 F.Supp.2d 1088, 1089–90 (D.Ariz.1998) ("Plaintiff was barred by [*Heck*] from claiming that his court-appointed attorney provided ineffective assistance of counsel because a judgment in his favor on that claim would necessarily imply the invalidity of his conviction."); *Woodward v. Sedgwick County Jail,* 927 F.Supp. 1473, 1475 (D.Kan.1996) (claim that plaintiff's "confessions and guilty pleas were coerced would squarely

---

4. The state court documents judicially noticed recite that on February 18, 1998 plaintiff was placed on probation with conditions that he serve 30 days of incarceration and pay $100 in restitution. Thus, assuming, in the absence of any contrary allegation, that plaintiff has abided by the terms of his probation, he does not seem to be imprisoned at this time for either of the convictions under consideration. Nonetheless, and regardless of the Supreme Court's ultimate determination of the question of *Heck*'s applicability to prisoners who are not technically "in custody," *see Spencer v. Kemna,* 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (debating this issue in dicta—5 justices stating that *Heck* does not apply to those not "in custody"), plaintiff remains "in custody" for purposes of the habeas statute. *See Arketa v. Wilson,* 373 F.2d 582, 583 (9th Cir.1967) (state probationer is "in custody" for habeas purposes); *cf. United States v. Span,* 75 F.3d 1383, 1386 n. 5 (9th Cir.1996) (probation establishes custody for purposes of 28 U.S.C. § 2255). Accordingly, his probationary status does not affect the Court's determination of the applicability of *Heck* to his claims.

call into question the lawfulness of his convictions"). Plaintiff, however, makes no such allegations.

Recognizing this, defendants focus on plaintiff's excessive force allegations, arguing that these allegations are logically inconsistent with plaintiff's obstruction of a peace officer conviction and are, thus, not cognizable under section 1983 so long as that conviction stands.[5] This contention finds support in the Supreme Court's considered dictum discussing this issue in footnote six of the *Heck* opinion, 512 U.S. at 486 n. 6, 114 S.Ct. at 2372 n. 6, and in the district court's decision in *Franklin v. County of Riverside*, 971 F.Supp. 1332 (C.D.Cal.1997).

■■ Leaving the nolo contendere issue to one side, the Court agrees that plaintiff's allegations that he was subjected to excessive force during his arrest, if proven, would necessarily imply the invalidity of his obstruction of a peace officer conviction. Under California Penal Code section 148 (section 148), a necessary element of a criminal prosecution for obstruction of a peace officer is that the obstruction must have occurred while the officer was engaged in the lawful performance of his or her duties. *See People v. Simons*, 42 Cal.App.4th 1100, 1110, 50 Cal.Rptr.2d 351, 355 (1st.Dist.1996) ("The legal elements of a violation of section 148 are as follows: the defendant (1) willfully resisted, delayed or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or should have known that the other person was a peace officer engaged in the performance of his or her duties."); *see also People v. Wilkins*, 14 Cal.App.4th 761, 776, 17 Cal.Rptr.2d 743, 751–52 (3rd Dist.1993) (violation of section 148 requires "as an element that the officer at the time of the offense be engaged in the lawful performance of his duties.").

■ An officer cannot be engaged in the lawful performance of her duties if she is subjecting an arrestee to excessive force. *See People v. Olguin*, 119 Cal.App.3d 39, 44, 173 Cal.Rptr. 663, 666 (5th.Dist.1981) ("Since the officer must be acting in the performance of his duty, the use of excessive force renders it impossible for an arrestee to violate section 148."); *People v. White*, 101 Cal.App.3d 161, 161 Cal.Rptr. 541 (4th.Dist.1980) (same); *cf. People v. Delahoussaye*, 213 Cal.App.3d 1, 7, 261 Cal.Rptr. 287, 289 (1st.Dist.1989) ("A peace officer is not 'engaged in the performance of his or her duties' within the meaning of [certain California statutes closely related to section 148] if he arrests a person unlawfully or uses excessive force in making the arrest.").

The Supreme Court explained in footnote 6 of the *Heck* opinion that a successful section 1983 action, premised on a police officer's use of excessive force during an arrest, would necessarily imply the invalidity of the plaintiff's conviction for resisting that arrest in a state where the lawfulness of the resisted arrest was a prima facie element of the resisting-arrest offense. *See Heck*, 512 U.S. at 486 n. 6, 114 S.Ct. at 2372 n. 6 ("In order to prevail in this § 1983 action, [the plaintiff] would have to negate an element of the offense of which he has been convicted. Regardless of the state law of res judicata, the § 1983 action will not lie.") (citation omitted). California is such a state, as the cited cases make clear, and as a result plaintiff, previously convicted of obstructing a peace officer in performing an arrest, may not bring a section 1983 action premised on the officer's use of excessive force in effecting the obstructed arrest. *Accord Franklin v. County of Riverside*, 971 F.Supp. 1332 (C.D.Cal.1997), *aff'd sub nom. Franklin v. Smith*, 161 F.3d 12 (9th Cir.1998) (table)[6]; *Gilmore v. Eubanks*,

**5.** There is no suggestion that any of plaintiff's allegations would imply the invalidity of plaintiff's conviction for carrying a concealed firearm, which resulted from plaintiff's nolo plea to that charge.

**6.** The Ninth Circuit's unpublished affirmance of *Franklin*, of course, is without precedential effect. *See Reynolds v. Todd Pac. Shipyards Corp.*, 122 F.3d 37 (9th Cir.1997) (per curiam); 9th Cir.R. 36–3.

1999 WL 144881 (N.D.Cal.1999) (slip.op. March 10, 1999). This is so because a finding in the instant action that Moreno used excessive force in arresting plaintiff would necessarily imply that Moreno was not engaged in the lawful performance of his duties during that arrest and that, consequently, plaintiff could not have violated section 148.

■■■ Although neither party directly addresses the issue, the same analysis applies to plaintiff's allegations that Moreno detained and arrested him without "reasonable cause" in violation of plaintiff's Fourth and Fourteenth Amendment rights. Under California law, an officer is not lawfully performing her duties when she detains an individual without reasonable suspicion or arrests an individual without probable cause. *See Olguin,* 119 Cal.App.3d at 45, 173 Cal.Rptr. at 666 (" 'The word "unlawful" in defining arrest [in section 148 and related statutes] is typically applied where a defendant claims his arrest was lacking in probable cause.' ") (quoting *White,* 101 Cal.App.3d at 167, 161 Cal.Rptr. at 544). Thus, plaintiff's unimpaired conviction for obstruction of a peace officer in violation of section 148, which offense includes the element that Moreno was performing his lawful duties, *i.e.* not detaining and arresting plaintiff without probable cause, bars plaintiff's section 1983 claims insofar as they are predicated on allegations that Moreno arrested or detained plaintiff without reasonable suspicion or probable cause. Such claims would suggest that plaintiff's conviction for violation of section 148 is invalid, and as a result they are precluded by *Heck.*

■■■ Similarly, to the extent plaintiff's section 1985 claim is predicated on the conspiracy theory that County law enforcement and prosecutorial officers agreed "to ensure" that the County prosecuted plaintiff for the sections 148 and 12025(a) offenses of which he was convicted, so as to deprive plaintiff of his constitutional right

of access to the civil courts, the claim is also barred by *Heck.* The Court assumes from the allegations of the FAC that plaintiff's theory is that Moreno and doe defendants collectively encouraged the County prosecutor to prosecute him for these violations so that *Heck* would bar any later section 1983 suit by plaintiff based on defendants' alleged employment of excessive force and other constitutional deprivations imposed upon plaintiff. Success on this conspiracy claim would imply that the state court convictions were potentially invalid, and plaintiff may only seek damages to remedy the alleged constitutional deprivations after the convictions have been reversed on direct appeal, invalidated by an authorized state tribunal, expunged through executive action, or called into question by obtaining a federal writ of habeas corpus

Finally, the Court concludes that *Hernandez v. City of Los Angeles,* 624 F.2d 935 (9th Cir.1980) does not require a different result with respect to any of plaintiff's claims. In that pre-*Heck* case, the Ninth Circuit held that a section 1983 plaintiff who had been convicted of violating section 148 was not collaterally estopped from litigating whether he was subjected to excessive force during his arrest:

> [No] firm conclusions about the manner of arrest [can] be drawn from the mere fact of conviction. Although a conviction for violation of section 148 is conclusive on the issue of the lawfulness of the arrest, a technically lawful arrest can be accomplished by the use of excessive force.

*Id.* at 938 (citations omitted).

The *Hernandez* court did not consider or decide whether a successful section 1983 action premised on the arresting officer's use of excessive force would necessarily imply the invalidity of the plaintiff's section 148 conviction. Rather, in keeping with the Ninth Circuit's pre-*Heck* jurisprudence, the *Hernandez* court evaluated the effect of the section 148 conviction on the plaintiff's section 1983 claims under the state law of collateral estoppel.[7] *See also*

---

7. The Ninth Circuit ultimately resolved the issue of the potential conflict between section

1983 and the habeas statute in *Young v. Ken-*

*Jackson v. Official Rep. and Employees of Los Angeles Police Dep't*, 487 F.2d 885, 886 (9th Cir.1973) (per curiam) ("Since collateral estoppel—in contrast to the aspect of res judicata known as bar—requires actual litigation of an issue, [the prisoner plaintiff] was not precluded from raising [issues pertaining to his illegal arrest] in his civil rights action.") (footnote omitted); *Ney v. California*, 439 F.2d 1285, 1288 (9th Cir.1971) ("[T]he judgment of conviction [of plaintiff] is not res judicata, and is not a bar to this [section 1983] action [alleging an unconstitutional pre-trial interrogation]."); *see also Johnson v. Mateer*, 625 F.2d 240, 241 (9th Cir.1980) ("[W]e hold that the doctrine of collateral estoppel does not bar the plaintiff from litigating in this section 1983 action the constitutional issues raised by him in the criminal proceeding in the state court."). Thus, the *Hernandez* decision does not control on the threshold question of the cognizability of the first and second causes of action stated in the FAC. *Cf. Heck*, 512 U.S. at 480 n. 2, 114 S.Ct. at 2368 n. 2 (noting that the favorable termination issue decided in *Heck* is distinct from the collateral estoppel issue).[8]

ny, 907 F.2d 874 (9th Cir.1989) ("[H]abeas must be the exclusive federal remedy not just when a state prisoner requests the invalidation or reduction of his sentence, but whenever the requested relief [including section 1983 money damages] requires as its predicate a determination that a sentence currently being served is invalid or unconstitutionally long.").

8. Thus the Court need not consider whether the language quoted from *Hernandez* is inconsistent with the reasoning of the numerous California cases holding that an individual subjected to excessive force during an arrest cannot be convicted of violating section 148. *Cf. People v. Jones*, 119 Cal.App.3d 749, 755–56, 174 Cal.Rptr. 218, 222 (3rd.Dist.1981) ("If the use of force is necessary to resist excessive force used by the officers then the application of force is justified and the defendant is guilty of no crime [including section 148]."); *Olguin*, 119 Cal.App.3d at 44–48, 173 Cal.Rptr. at 666–68; *White*, 101 Cal.App.3d at 166–67, 161 Cal.Rptr. at 544–45. As a result, the Court also need not consider the even more difficult question of whether these state inter-

## D. Nolo Pleas and Heck

Although it is clear that plaintiff's section 1983 excessive force claims would not be cognizable if his obstruction conviction had resulted from a jury verdict or a guilty plea, the question remains whether the fact that plaintiff was convicted pursuant to a negotiated plea of nolo contendere alters this result. The Court concludes that, for purposes of the *Heck* analysis, a plea of nolo contendere in a California criminal action has the same effect as a guilty plea or jury verdict of guilty.

California's nolo contendere plea is authorized by section 1016(3) of the California Penal Code (section 1016(3)), which currently provides:

There are six kinds of pleas to an indictment or information, or to a complaint charging a misdemeanor or infraction: ... [¶] 3. Nolo contendere, subject to the approval of the Court. The Court shall ascertain whether the defendant completely understands that a plea of nolo contendere shall be considered the same as a plea of guilty and that, upon a plea of nolo contendere, the court shall find the defendant guilty. The legal effect of such a plea, to a crime punisha-

mediate appellate court decisions, several of which—*Olguin, Jones, Delahoussaye*—were announced subsequent to the Ninth Circuit's decision in *Hernandez*, require or permit this Court to depart from the *Hernandez* statement. *Compare Perez v. Brown & Williamson Tobacco Corp.*, 967 F.Supp. 920, 926 (S.D.Tex.1997) ("Adherence by a federal district court to a circuit court's '*Erie* guess' is appropriate, even when there exists a decision from the state's intermediate level appellate court that is inconsistent with the circuit court's resolution of the state law issue."), and *Hultz v. Federated Mut. Ins. Co.*, 817 F.Supp. 59, 61–62 (C.D.Ill.1993) (same) *with EnergyNorth Nat. Gas Inc. v. Associated Elec. & Gas Ins. Serv., Ltd.*, 21 F.Supp.2d 89, 91 (D.N.H.1998) (district court may choose not to follow "unconsidered" circuit court dictum on question of state law if state supreme court has not resolved the question and relevant state precedents suggest a contrary result). *Cf. Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 932 (9th Cir.1981) ("District courts are bound by the law of their own circuit" and may not attempt to resolve splits in authority).

ble as a felony, shall be the same as that of a plea of guilty for all purposes. In cases other than those punishable as felonies, the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of, and factual basis for, the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based.

Thus, when plaintiff's pleas of nolo contendere (nolo plea) were accepted by the Superior and Municipal Court of California, County of San Bernardino, he was convicted of the two charged offenses to which he entered these type pleas, violations of section 148 and 12025(a) of the Penal Code.[9] In this particular case, the state court further found that there was a factual basis for the pleas, although in light of the fact that the plea was to misdemeanor offenses, there does not appear to have been any requirement that the court make such a finding. *See* Cal.Pen.Code § 1192.5 (requiring factual basis inquiry only where court accepts a negotiated plea to certain felony charges); *In re Gross*, 33 Cal.3d 561, 567, 189 Cal.Rptr. 848, 852, 659 P.2d 1137 (1983) (section 1192.5 does not apply to misdemeanors).

Under section 1016(3), a nolo plea to a felony offense has the same "legal effect . . . as that of a plea of guilty for all purposes." A nolo plea to a misdemeanor offense, such as the alleged violations of sections 148 and 12025(a), however, "may

not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." Thus, neither plaintiff's nolo plea, nor any required admission made by plaintiff during the plea process, can be used against him as an admission in any civil suit growing out of the offenses to which he pled.[10]

Plaintiff contends that this aspect of California's law of nolo pleas resolves the instant motion in his favor. He argues that section 1016(3) prevents his nolo plea from being used against him in this action, which concededly is a "civil suit based upon or growing out of the act upon which the criminal prosecution [was] based." The Court disagrees.

Section 1016(3), to the extent it applies in federal court, prevents the use of plaintiff's nolo pleas against him in this action "as an admission." Defendants, however, do not seek to use the nolo pleas against plaintiff as admissions. Rather, under *Heck*, what is relevant about plaintiff's nolo pleas and the resulting sections 148 and 12025(a) convictions is the simple fact of their existence. Absent an allegation in the FAC that the plaintiff's section 148 conviction has been reversed on appeal, expunged by executive order, invalidated by a state tribunal or is called into question by a federal writ of habeas corpus, plaintiff simply has no section 1983 cause of action based on Moreno's alleged use of excessive force during plaintiff's arrest be-

---

**9.** As noted above, the third charge against plaintiff, violation of section 12031(a), was dismissed on the prosecutor's motion.

**10.** Defendants argue that the statutory language "the plea may not be used against *the defendant* as an admission" (emphasis added) applies only where the plea or a related admission is sought to be used against the pleading party who is also a defendant in a related civil action. Although, the point does not bear on the Court's resolution of the *Heck* issue presented here, the Court disagrees with the contention. The statutory reference to "the defendant" clearly refers to the criminal action defendant entering the relevant plea. There are varied circumstances where the de-

fendant who enters a nolo plea to a misdemeanor charge in a criminal action becomes a plaintiff in a civil action (such as here) and the (civil action) defendant attempts to admit into evidence the nolo plea and any associated admissions against the plaintiff. In a California court, the nolo plea may be admissible against the civil action plaintiff for impeachment or similar non-admission purposes. *But cf.* Fed.R.Evid. 410 (barring use of nolo plea as impeachment evidence against a civil plaintiff) ("Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea . . . (2) a plea of nolo contendere . . . .").

cause it would necessarily imply the invalidity of plaintiff's section 148 conviction.

Plaintiff essentially argues that his nolo plea, and his resulting conviction of violating section 148, cannot collaterally estop him from litigating in this Court the factual question of whether or not defendant Moreno employed excessive force in arresting him. He asserts that this issue was not litigated in state court, and that section 1016(3) removes his nolo-based misdemeanor conviction from the California rule that a guilty plea constitutes an admission of each element of the plead offense. *See People v. Guerrero*, 19 Cal. App.4th 401, 407, 23 Cal.Rptr.2d 803, 807 (2d.Dist.1995) ("A guilty plea admits every element of the crime charged.").

Furthermore, although plaintiff does not make the argument, under California law, while a guilty plea admits every element of the pled offense, "[c]onsiderations of fairness to civil litigants and regard for the expeditious administration of criminal justice combine to prohibit the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, seeks for the first time to litigate his cause in a civil action." *Teitelbaum Furs, Inc. v. Dominion Ins. Co.*, 58 Cal.2d 601, 605–06, 25 Cal.Rptr. 559, 561, 375 P.2d 439 (1962). *See also People v. Goodrum*, 228 Cal. App.3d 397, 403, 279 Cal.Rptr. 120, 123 (4th.Dist.1991) ("*Teitelbaum* fully permits a party in a subsequent civil action to contest the truth of the matters admitted by his plea of guilty, present all facts surrounding the same including the nature of the charge and the plea, and explain why he entered such plea.") (internal quotations omitted). *But compare Calvillo–Silva v. Home Grocery*, 19 Cal.4th 714, 736 n. 18, 80 Cal.Rptr.2d 506, 522 n. 18, 968 P.2d 65 (under Cal.Civ.Code § 847 (property owners immune to tort suits by those injured while committing crimes on their property), a tort plaintiff "may not litigate the facts behind his nolo contendere plea to avoid triggering the [immunity] statute's application") *with id.* at 739–41, 80 Cal.Rptr.2d at 523–26, 968 P.2d 65 (Werdegar, J., concurring in part and dissenting in part) (accusing *Calvillo–Silva* majority of overruling *Teitelbaum Furs sub silentio*).

The problem with these arguments is that the *Heck* rule of preclusion does not depend on the content of California's law of collateral estoppel. Regardless whether, as a matter of California law, a plaintiff could litigate, in a state civil action against these defendants, the factual circumstances of his arrest and resulting nolo plea, he may not do so via a section 1983 damages action while his obstruction of an officer conviction stands unimpaired.

This conclusion finds support in the Ninth Circuit's treatment of a related issue—whether an alien who has pled nolo contendere to a qualifying offense is deportable under the immigration statute allowing for deportation of aliens "convicted" of such offenses. *See* 8 U.S.C. § 1227(a)(2) (listing qualifying offenses) (transferred from former 8 U.S.C. § 1251). In *Ruis–Rubio v. INS*, 380 F.2d 29 (9th Cir.1967), for example, petitioner Ruis–Rubio had entered a nolo plea to a California drug possession offense. When the INS commenced deportation proceedings against him based on this offense, Ruis–Rubio argued that the judgment of guilty that resulted from his nolo plea was not a "conviction" within the meaning of the federal deportation statute. The Ninth Circuit rejected the argument: "While it may be true, as petitioner maintains, that a guilty judgment following a nolo contendere plea can not be used as an admission in a subsequent action, it has been held that the conviction may be noticed for purposes of deportation where the fact of the conviction is itself the only thing that is relevant." *Id.* at 29–30. *See also Tseung Chu v. Cornell*, 247 F.2d 929 (9th Cir.1957) (alien deportable for failing to disclose fact of conviction by nolo plea of tax evasion in visa application, where application asked if he had ever been "convicted").

Similarly, in *Contreras v. Schiltgen*, 122 F.3d 30 (9th Cir.1997), *adhered to on rehearing*, 151 F.3d 906 (1998), petitioner

Contreras pled no contest in California court to assault with a firearm. While Contreras was serving his sentence for this offense, the INS commenced deportation proceedings against him based on the assault conviction. Contreras initiated a federal court habeas corpus action against the District Director of the INS, arguing that ineffective assistance of counsel rendered his state nolo plea involuntary and the resulting assault conviction invalid. The Ninth Circuit held that a habeas petitioner such as Contreras who had entered a nolo contendere plea to an admittedly deportable offense could not challenge either the validity of his conviction or his INS detention without first "successfully overturn[ing] his conviction in [an action against the convicting state]." *Id.* at 33 (citing *Heck*). As in *Ruis–Rubio, Tseung Chu,* and *Contreras,* it is the very fact of plaintiff's conviction, even if it resulted from a nolo plea, that prevents him from maintaining the instant action.

Furthermore, to the extent the *Heck* rule rests on an analogy between section 1983 and the common law malicious prosecution tort action,[11] conviction by plea of nolo contendere does not typically qualify as a favorable termination of an action for purposes of the malicious prosecution tort. *See, e.g., Cote v. Henderson,* 218 Cal. App.3d 796, 803–04, 267 Cal.Rptr. 274, 278 (2d.Dist.1990) ("The plea of nolo contendere ... negated the element of a favorable termination, which is a prerequisite to stating a cause of action for malicious prosecution"); *Pete v. Metcalfe,* 8 F.3d 214, 219 (5th Cir.1993) ("*Pete* fails to state a claim for malicious prosecution because his prosecution ended with a plea of nolo

contendere and thus the action did not terminate in his favor."); *Yarbrough v. SAS Systems, Inc.,* 204 Ga.App. 428, 429, 419 S.E.2d 507, 508–09 (1992) ("[A] conviction of the prosecuted offense based on the entry of a plea of nolo contendere does not constitute a termination of the prosecution in favor of the defendant. ... ").

Finally, the other courts which have addressed the issue presented here have concluded that the *Heck* rule applies where the successful prosecution of a section 1983 damages action would necessarily imply the invalidity of a conviction entered on the basis of a plea of nolo contendere. *See Thompson v. City of Galveston,* 979 F.Supp. 504 (S.D.Tex. 1997), *aff'd* 158 F.3d 583 (5th Cir.1998) (table); *Moser v. Bascelli,* 879 F.Supp. 489 (E.D.Pa.1995), *aff'd* 70 F.3d 1256 (3d Cir.1995) (table). *But see Anderson v. Andrews,* 692 So.2d 237, 242 (Fla.Ct.App. 1997) ("Assuming, without deciding, that appellant's no contest pleas would not bar the section 1983 action related to the underlying charges ....") (relying on common law of malicious prosecution and rules of evidence, but not discussing *Heck*).[12] Thus, the Court concludes that the fact that plaintiff's obstruction of an officer conviction was by plea of nolo contendere does not have any effect on the application of the rule of *Heck v. Humphrey* which precludes his section 1983 cause of action based on Moreno's alleged use of excessive force in arresting plaintiff.

■■■ This conclusion comports with the clear aim of *Heck* to prevent federal section 1983 action collateral attacks on state

---

**11.** *But see Heck,* 512 U.S. at 491–504, 114 S.Ct. at 2375–81 (Souter, J., concurring in the judgment) (criticizing the *Heck* majority's over reliance on the malicious prosecution analogy); *Spencer v. Kemna,* 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (5 justices adopting, in dicta, Justice Souter's reasoning in *Heck*).

**12.** Several courts, including the Ninth Circuit, have considered the application of *Heck* to convictions based on nolo pleas in unpub-

lished opinions, often without discussing the relevance of the nolo plea. *See, e.g., Swangin v. California State Police,* 168 F.3d 501, 1999 WL 97361 (9th Cir.) (table) (not discussing nolo issue); *Ellis v. State of California,* 1997 WL 142798 (N.D.Cal., March 20, 1997) (same); *Kevakian v. Kennedy,* 1995 WL 7938 (N.D.Cal.) (same); *Olsen v. Correiro,* 1994 WL 548111 (D.Mass., Sept.26, 1994) (discussing issue and concluding that Massachusetts nolo plea is identical to a guilty plea for *Heck* purposes).

court criminal convictions, and to channel litigation relating to state convictions, and the sentences and confinement resulting therefrom, into the federal habeas corpus process. *See Smith v. Holtz*, 87 F.3d 108, 113 (3d Cir.1996) ("The express objectives of [the *Heck*] holding were to preserve consistency and finality, and to prevent a collateral attack on a conviction through the vehicle of a civil suit.") (internal quotations and brackets omitted). By foreclosing a section 1983 challenge to an unimpaired nolo-plea based conviction for obstruction of an officer, the *Heck* rule ensures that issues germane to the underlying state law criminal offense are litigated either in the state courts—at trial or through direct appeal or a state petition for a writ of habeas corpus—or in the federal habeas corpus process designed to handle such challenges to allegedly unlawful state "custody." Section 1983 remains fully available to plaintiffs—even those convicted of state crimes—whose claims do not implicate the validity of their state convictions. *Cf. Smithart v. Towery*, 79 F.3d 951 (9th Cir.1996) (per curiam) (Nevada law) (*Heck* barred claim that plaintiff was arrested without probable cause—this claim required to be raised by petition for a writ of habeas corpus—but did not bar claim that plaintiff was subjected to excessive force during and after his arrest) (plaintiff not convicted of obstructing or resisting arrest).

**D. Additional Claims**

 *Heck* also bars any potential section 1983 claim for deprivation of plaintiff's Fourteenth Amendment rights based on the state charge against plaintiff for violation of California Penal Code section 12031(a) (carrying a loaded firearm), being dismissed on the prosecutor's motion, "per plea bargain." No section 1983 type claim can be brought on the basis of this charge being dismissed because, the charge, though dismissed, nevertheless did not terminate in plaintiff's favor for purposes of *Heck* preclusion. *See Coakley v. Jaffe*, 49 F.Supp.2d. 615 (S.D.N.Y. 1999) ("Since the dismissal was ... 'the result of compro-

mise to which the accused agreed,' it was not a favorable termination, and plaintiff's malicious prosecution claims, both under § 1983 and New York State law, must be dismissed.") (citation omitted) (quoting *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir.1997)); Restatement (Second) of the law of Torts, § 660(a) ("A termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if ... the charge is withdrawn or the prosecution abandoned pursuant to an agreement or of compromise with the accused.").

Finally, because the Court will dismiss the first and second causes of action over which it has original jurisdiction, it will decline to exercise supplemental jurisdiction over the third cause of action for battery and false imprisonment, which is a supplemental claim. *See* 28 U.S.C. § 1367(c)(3). This cause of action will also be dismissed.

**III.**

**DISPOSITION**

THEREFORE, IT IS ORDERED THAT:

1. Defendants' Motion to Dismiss the First and Second Causes of Action of the First Amended Complaint is granted.

2. The First and Second Causes of Action of the First Amended Complaint are dismissed without prejudice. *See Trimble v. City of Santa Rosa*, 49 F.3d 583, 584 (9th Cir.1995) (per curiam) ("The [Heck] dismissal was required to be without prejudice so that Trimble may reassert his claims if he ever succeeds in invalidating his conviction.").

3. The Third Cause of Action of the First Amended Complaint is Dis-

missed, pursuant to 28 U.S.C. § 1367(c)(3).